UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-80031-CR-Rosenberg/Matthewman

UNITED STATES OF AMERICA,

v.

ANTONIO JOSE MARTINEZ,

Defendant.
_____/

FILED BY ____KJZ____ D.C.

Aug 19, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER DENYING DEFENDANT'S EXPEDITED MOTION
## FOR RECONSIDERATION OF BOND

THIS MATTER is before the Court upon Antonio Jose Martinez's ("Defendant") Expedited Motion for Reconsideration of Bond ("Motion"), in which he asserts that he has received a positive diagnosis of COVID-19 while held in pretrial detention at FDC Miami. [DE 64]. The Court set an expedited briefing schedule, directing the parties to address certain factors relevant to Defendant's diagnosis. [DE 65]. The Court also ordered the release of medical records on July 22, 2020 [DE 67], and subsequently ordered that they be updated on July 28, 2020. [DE 71], and then again on July 30, 2020. [DE 74]. The Government filed an expedited response in opposition to the Motion. [DE 68]. Defendant filed an expedited reply. [DE 70]. The parties submitted three sets of medical records under seal. [DEs 69, 73, 75].

The Court has carefully considered all the matters raised in Defendant's Motion, the response, reply, all sets of medical records, all relevant caselaw, and is fully advised in the premises. The Court finds that an evidentiary hearing is not necessary. As such, this matter is ripe for review.

### I. Factual Background and Procedural History

The Court conducted Defendant's arraignment on March 4, 2020. At his arraignment, Defendant stipulated to detention, reserving the right to move for release at a later date. [DE 20]. The Court ordered Defendant's pretrial detention, [DE 21], and stated that the Defendant would be afforded a full detention hearing at a later date if he subsequently requested one.

On April 7, 2020, Defendant filed a "Motion for Detention Hearing," in which he sought release, citing to 18 U.S.C. 3142(i) and 3142(a). Due to the exigent circumstances presented by the confluence of Defendant's age (69 years old), health, and the COVID-19 pandemic, the Court set an expedited hearing and briefing schedule. On April 10, 2020, the Government opposed Defendant's Motion, and argued for pretrial detention on the grounds that Defendant is a substantial or serious risk of flight or nonappearance and a danger to the community. [DE 37].

The Court held expedited hearings on Defendant's Motion on April 24, 2020, and May 8, 2020. Following the May 8, 2020 hearing, the Court orally ordered that Defendant be detained, and issued a written order thereafter. [DE 52]. The Court will briefly summarize portions of its findings to the extent they are applicable here.

    a. The Offense Charged

Defendant is charged by Indictment with conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a) and 846 (Count 1); possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a) (Count 2); and possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a) (Count 5). [DE 16].

### b. The Court's Decision to Detain Defendant [DE 52]

The Court Ordered that Defendant be detained pending trial based on several factors, including the seriousness of the charges against Defendant, including the ten-year mandatory minimum sentence; the strong evidence against him as detailed the in Criminal Complaint; the Indictment; the Pretrial Services Report; the applicable rebuttable presumption; the fact that Defendant is not a U.S. citizen, but rather is a native of Cuba; Defendant's serious substance abuse problem; and, Defendant's prior criminal history.

The Court noted that Defendant was 69 years of age and faced a 10-year mandatory minimum sentence in a case with overwhelming evidence. The Court found that this gave Defendant a very strong incentive to flee to Cuba, his country of nationality. The Court emphasized and was quite concerned then, as it is now, that Defendant stated in his post-arrest statement that he would have fled if he had known that his drug supplier had been arrested. The Court held that it could not simply ignore the Defendant's expressed intention to flee.

The Court then addressed Defendant's argument regarding susceptibility to COVID 19, made pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act.[1] The Court discussed the rapidly changing landscape of caselaw addressing the novel coronavirus pandemic's impact on federal pretrial detention decision-making. The Court agreed with the majority of other courts holding that generalized concerns that an inmate will contract the virus—which exists in every part of society, not just inside a detention facility—were insufficient to justify release. Further, the Court agreed

---

[1] That section provides, in relevant part, that

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

3

with the Government, that the sheer weight of the evidence and the likelihood that Defendant will flee to Cuba both act as counterweights to the "compelling reason" of Defendant's age and health.

      c. The Expedited Motion [DE 64] and Expedited Response [DE 68] and Reply [DE 70]

The Court will not belabor the parties' positions asserted in their expedited briefing, because they are all based upon the faulty premise[2] that Defendant tested positive for COVID-19 at FDC-Miami—in fact, he does not have COVID-19. Of the three tests actually conducted at FDC-Miami, all resulted in **negative** diagnoses for COVID-19, on May 6, 2020, June 9, 2020, and August 4, 2020. [DE 75-1, pp. 1].

In the underlying Motion,[3] Defendant asserts that he has been diagnosed with COVID-19, and he seeks reconsideration of this Court's prior Order denying him bond on that basis. In support, Defendant points to his advanced age and health conditions, including skin cancer, chronic

---

[2] It appears that both sets of counsel misinterpreted the FDC-Miami medical records. On July 14, 2020, a Clinical Encounter Administrative Note was entered by RN Pedro Maldonado-Camacho, which ordered a "laboratory request" for a COVID-19 test, to be conducted on that day; the Note also placed Defendant in quarantine under the COVID-19 protocol. [DE 69-1, pp. 5]. The next day, on July 15, 2020, an additional Clinical Encounter Administrative Note was entered by PA Stephen Gonsalves, which ordered another COVID-19 test on that day, as well as on the last day of the 14-day quarantine period. [DE 69-1, pp. 3]. On July 17, 2020, PA Gonsalves noted an additional clinical encounter, stating:

> COVID-19 Symptom Screening (by check sheet) and temperature check via Infrared thermometer in dorm for total dorm population. Positive screen will result in COVID-19 rapid PCR test for this patient. This patient's screen was (+) positive for reported cough and for an elevated temperature by thermometer but (-) negative for shortness of breath, and loss of sense of smell and/or taste on the date and time of this screening 7/17/2020 at ~1300.

[DE 69-1, pp. 2]. The Note concluded with the phrase, "ASSESSMENT: suspect/probable COVID-19 case." The Court finds that these records indicate that Defendant displayed certain symptoms that are common symptoms of COVID-19, and out of an abundance of caution, BOP personnel placed Defendant in quarantine. This is, obviously, quite different from a laboratory test result indicating that Defendant contracted the virus. The Court notes that neither the first set [DE 69-1] or second set of records [DE 73-1] contain the actual results of any COVID-19 test.

[3] It is unclear what specific provision of the Bail Reform Act Defendant seeks relief under; however, since the prior motion for bond [DE 35] primarily sought relief pursuant to Section 3142(i), the Court shall address the current Motion under the framework provided therein.

obstructive pulmonary disease (COPD), and obesity. Defense counsel represents that Defendant "is not aware of the level of care he is receiving" and has been placed in quarantine. [DE 64, p. 2].

The Government responds [DE 68] that Defendant is receiving adequate treatment, has a low-grade fever, and that his "positive diagnosis" has no relevance as to whether he poses a substantial risk of nonappearance if he is released.

Defendant's reply [DE 70] focuses primarily on the lack of factual clarity in this matter and seeks an evidentiary hearing. However, after close and careful review of the FDC-Miami medical records filed in this case [DEs 64-1, 69, 73, 75], the Court sees no need for an evidentiary hearing as there are no material facts in dispute.

## II.  Legal Standard

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on his status as a flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure his presence at trial. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985). By contrast, where the Government seeks to detain a defendant based on a contention that he is a danger to the community, it must show by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *Id.* However, where, like here, a defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, a rebuttable presumption arises that the person is both a flight risk and a danger to the community. "Once the statutory presumptions are raised, the defendant carries the burden of production to come forward with evidence to rebut the

presumptions." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). But this "obligation to come forward with evidence does not shift to the defendant the government's burden of persuasion." *Id.* (citing *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988)). Accordingly, in a presumption case, the defendant bears the burden of producing evidence to suggest that he is not dangerous and/or that he is not likely to flee if released. *Quartermaine*, 913 F.2d at 916 (quoting *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985)). In presumption cases, "the presumption becomes evidence to be considered along with other evidence listed in the [Bail Reform] Act as indicative of risk of flight or danger to the community." *Quartermaine*, 913 F.2d at 916. Finally, the presumption of detention does not alter the defendant's underlying presumption of innocence. *See* 18 U.S.C. § 3142(j).

### III.   Analysis

Defendant's medical records establish that Defendant's COVID-19 tests on May 6, 2020, and June 9, 2020, were both negative for COVID-19; and further, Defendant's most recent COVID-19 test on August 4, 2020 was also negative for COVID-19. [DEs 69, 73, 75]. Based upon this review, it is clear to the Court that Defendant does **not** have COVID-19 currently. Accordingly, there is no basis for the release of Defendant.

Moreover, the FDC-Miami medical records clearly show that Defendant is receiving good and competent medical care. He has been evaluated and seen by medical staff on numerous occasions for his underlying medical conditions. Defendant has been prescribed medication as needed for his medical conditions and he has received proper treatment for those medical conditions. Defendant was also properly quarantined when it was suspected he may have had COVID-19. In sum, the lengthy medical records from FDC-Miami show that the medical staff are quite attentive to Defendant's medical care and needs.

The Court continues to believe that Defendant poses a serious risk of flight or nonappearance and a danger to the community if he were to be released, and that there is no condition or combination of conditions of release that would reasonably assure Defendant's presence in Court or the safety of the community. *See generally* DE 52.  Moreover, the Court notes that although Defendant is not currently COVID-19 positive, a Defendant's positive COVID-19 test while incarcerated pretrial does not necessarily mean that the pretrial detainee must be released.  Numerous courts from around the country have ordered that COVID-19 positive pretrial detainees with underlying health conditions must remain detained. *See, e.g., United States v. Cook*, 2020 WL 1939612 (M.D. Penn. Apr. 22, 2020); *United States v. West*, 2020 WL 1638840 (D. Md. Apr. 2, 2020); *United States v. Carrington*, 2020 WL 2029391, at *9 (N.D. Ind. Apr. 28, 2020). However, the Court does not need to address those cases, or determine that issue in this Order,  as Defendant is currently COVID-19 negative, and there are no present circumstances or facts which would cause the Court to reconsider its prior Pretrial Detention Order.

## IV.  Conclusion

Accordingly, Defendant's Expedited Motion for Reconsideration of Bond [DE 64] is **DENIED**.

**DONE and ORDERED** in chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, on the 19th day of August, 2020.

*/s/ William Matthewman*
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE